Filed 3/20/25  P. v. Samuel CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ALLEN KURT SAMUEL,<br><br>    Defendant and Appellant. | 2d Crim. No. B335009<br>(Super. Ct. No. TA053449)<br>(Los Angeles County) |

Allen Kurt Samuel appeals the denial of his petition for resentencing under Penal Code[1] section 1172.6.  The trial court found Samuel failed to make a prima facie case for relief because the record of conviction shows he acted with actual malice.  We affirm.

FACTS

Samuel was a high ranking member of the Mob Piru Bloods gang.  He had a number of violent confrontations with Juan Tillman and Oscar Fonoti.  On April 16, 1999, Samuel's van

---

[1] All statutory references are to the Penal Code.

drove by Fonoti with Samuel in the passenger seat. Fonoti heard gunshots and ran. He was shot in the leg and a bullet grazed his back. About 10 minutes later, a witness saw Samuel go over a low brick wall with a rifle. Samuel shot and killed Tillman.

### *Trial*

Samuel was the sole defendant at trial. He was charged with first degree murder of Tillman. (§ 187, subd. (a).) It was further alleged that Samuel intentionally killed Tillman while lying in wait. (§ 190.2, subd. (a)(15).) Samuel was also charged with the willful, deliberate, premeditated attempted murder of Fonoti. (§§ 187, subd. (a), 664, subd. (a).)

### *(a) Instructions*

### Murder of Tillman

The trial court instructed the jury with CALJIC No. 8.20 in part as follows:

"All murder which is perpetrated by any kind of willful, deliberate and premeditated killing with express malice aforethought is murder of the first degree.

"The word 'willful,' as used in this instruction, means intentional.

"The word 'deliberate' means formed or arrived at or determined upon as a result of careful thought and weighing of considerations for and against the proposed course of action. The word 'premeditated' means considered beforehand.

"If you find that the killing was preceded and accompanied by a clear, deliberate intent on the part of the defendant to kill, which was the result of deliberation and premeditation, so that it must have been formed upon pre-existing reflection . . . it is murder of the first degree."

The jury was also instructed with CALJIC No. 8.81.15 in part as follows:

"To find that the special circumstance referred to in these instructions as murder while lying in wait is true, each of the following facts must be proved:

"1. [The] . . . defendant intentionally killed the victim, and

"2. The murder was committed while [the] . . . defendant was lying in wait."

### Attempted Murder of Fonoti

For the attempted murder of Fonoti, the trial court instructed the jury with CALJIC No. 8.66 as follows:

"Every person who attempts to murder another human being is guilty of a violation of Penal Code §§ 664 and 187.

"Murder is the unlawful killing of a human being with malice aforethought.

"In order to prove attempted murder, each of the following elements must be proved;

"1. A direct but ineffectual act was done by one person towards killing another human being; and

"2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."

The trial court did not instruct on felony murder, the natural and probable consequences doctrine or any other theory, or imputed malice.

### Aiding and Abetting

In summation, the prosecutor told the jury that it need not find Samuel was the actual shooter, and that the court would give instructions on aiding and abetting.

The trial court instructed the jury with CALJIC 3.00:

3

"Persons who are involved in [committing] [or] [attempting to commit] a crime are referred to as principals in that crime. Each principal, regardless of the extent or manner of participation is equally guilty. Principals include:

"1. Those who directly and actively [commit] [or] [attempt to commit] the act constituting the crime, or

"2. Those who aid and abet the [commission] [or] [attempted commission] of the crime."

The jury was also instructed with CALJIC No. 3.01 as follows:

"A person aids and abets the [commission] [or] [attempted commission] of a crime when he or she:

"(1) With knowledge of the unlawful purpose of the perpetrator, and

"(2) With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and

"(3) By act or advice aids, promotes, encourages or instigates the commission of the crime.

"[A person who aids and abets the [commission] [or] [attempted commission] of a crime need not be present at the scene of the crime.]

"[Mere presence at the scene of a crime which does not itself assist the commission of the crime does not amount to aiding and abetting.]

"[Mere knowledge that a crime is being committed and the failure to prevent it does not amount to aiding and abetting.]."

Verdicts

The jury found that Samuel murdered Tillman and that the murder was of the first degree. The jury also found true the

4

special circumstance that Samuel "intentionally killed the victim by means of lying in wait."

The jury found Samuel guilty of the attempted murder of Fonoti, and that the attempted murder was committed "willfully, deliberately and with premeditation."

The trial court sentenced Samuel to life without the possibility of parole for the first degree murder of Tillman with special circumstances, and life for the attempted murder of Fonoti.

We affirmed on appeal. (*People v. Samuel* (B143043, Oct. 31, 2001) [nonpub. opn.].)

## DISCUSSION

### I. Section 1172.6

Effective January 1, 2019, the Legislature amended sections 188 and 189 to limit the application of the felony murder rule and the natural and probable consequences doctrine. (Stats. 2018, ch. 1015, §§ 2, 3.)

Section 188, subdivision (a)(3) now provides, in part, "Malice shall not be imputed to a person based solely on his or her participation in a crime."

Section 189, subdivision (e) provides:

"A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven:

"(1) The person was the actual killer.

"(2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree.

"(3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Along with the amendments to sections 188 and 189, the Legislature enacted section 1172.6 (formerly § 1170.95) (Stats. 2018, ch. 1015, § 4).  The section provides retroactive relief to persons who were convicted of murder, attempted murder, or manslaughter under the felony murder rule, the natural and probable consequence doctrine, or any theory under which malice is imputed to a person based solely on that person's participation in a crime.

Section 1172.6, subdivision (a) provides:

"(a) A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply:

"(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine.

"(2) The petitioner was convicted of murder, attempted murder, or manslaughter following a trial or accepted a plea offer

in lieu of a trial at which the petitioner could have been convicted of murder or attempted murder.

"(3) The petitioner could not presently be convicted of murder or attempted murder because of changes to Section 188 or 189 made effective January 1, 2019."

A person seeking relief under section 1172.6 must file a petition with the court that sentenced him or her alleging that he or she is eligible for relief based on all the requirements of subdivision (a). (§ 1172.6, subd. (b)(1)(A).) The court must review the petition to determine whether the petitioner has made a prima facie showing of entitlement to relief. (*Id.*, subd. (c).) If the petitioner makes a prima facie showing, the court shall issue an order to show cause. (*Ibid.*) Within 60 days of issuing the order to show cause, the court must hold a hearing to determine whether the petitioner is entitled to relief. (*Id.* at subd. (d)(1).)

In determining whether the petitioner has made a prima facie case, the trial court should consider the record of conviction. (*People v. Lewis* (2021) 11 Cal.5th 952, 970-971.) Here the record of conviction unequivocally shows that Samuel failed to make a prima facie case.

The jury found that Samuel acted with actual malice, that is, the intent to kill. Samuel points out that section 1172.6 covers not only convictions based on felony murder and natural and probable consequences but also "other theor[ies] under which malice is imputed to a person based solely on that person's participation in a crime." But what section 1172.6 does not cover is convictions based on actual malice; the convictions that we are concerned with here. Samuel's convictions were not based on any theory of imputed malice.

7

Samuel's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 is misplaced. In *Langi*, the defendant participated in a fist fight with several others. The victim was punched in his face, fell, hit his head, and died. A jury convicted the defendant of second degree murder. Defendant petitioned for relief under section 1172.6. The trial court denied the petition for failure to state a prima facie case. The Court of Appeal reversed stating:

"The aiding-and-abetting instruction stated that a person aids and abets a crime if he or she acts '*with knowledge of the unlawful purpose of the perpetrator*, and . . . with the intent or purpose of committing or encouraging or facilitating the commission of the crime.' (CALJIC No. 3.01, italics added.) However, as noted above, the second degree murder instruction specified that the direct perpetrator of that crime need not act with the unlawful intent of causing death. Thus, while the perpetrator must have deliberately performed the fatal act 'with knowledge of the danger to, and with conscious disregard for, human life' (CALJIC No. 8.31), his purpose may have been only to strike or to injure, or conceivably only to embarrass, the victim. Since the perpetrator's purpose need not have been to kill the victim, the aider and abettor's knowledge of that purpose similarly need not have been knowledge that the perpetrator aimed to kill. If the perpetrator need not have had 'murderous intent,' certainly the aider and abettor need not have had such an intent. Although the definition of second degree murder in CALJIC No. 8.31 states that the perpetrator must have acted with conscious disregard for human life, the definition of an aider and abettor in CALJIC No. 3.01 does not include the same requirement. Thus, under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and

8

abettor of second degree murder, appellant need only have intended to encourage the perpetrator's intentional act – in this case, punching [the victim] – whether or not appellant intended to aid or encourage [the victim's] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*People v. Langi* (2022) 73 Cal.App.5th at pp. 982-983.)

*People v. Langi*, *supra*, 73 Cal.App.5th 972, involves an ambiguity that can arise when the standard aiding and abetting instruction is applied to second degree murder.  This case does not involve second degree murder.  Although the intent behind punching someone in the face may be ambiguous, the intent behind shooting two people, and killing one of them, is not.

The view of the Court of Appeal in *Langi*, is that a problem arises with second degree murder because there is no need to show the perpetrator had what the court calls "murderous intent."  (*People v. Langi*, *supra*, 73 Cal.App.5th at p. 982.)  But this case concerns first degree murder.

The intent to kill is required for first degree murder, and the jury was so instructed here.  The jury was further instructed that to find Samuel guilty as an aider and abettor, it must find he acted "with knowledge of the unlawful purpose of the perpetrator," that is, to kill.  (CALJIC No. 3.01.)  There is no ambiguity in the instructions.

*II. Prosecutor's Statement*

Samuel's reliance on a comment by the prosecutor in an argument to the jury is also unavailing.  The prosecutor told the jury that "all the people that aid[ed] and abetted in this crime are equally liable."  Samuel claims the prosecutor's statement in conjunction with ambiguous jury instructions could have allowed

the jury to convict him as an aider and abettor based solely on his participation in the crime.

But the instructions here were not ambiguous. They told the jury that in order to find Samuel guilty of first degree murder, special circumstances, and attempted murder, they had to find he acted with the intent to kill. Moreover, the trial court instructed the jury that it was to follow the court's instructions even if counsel's argument conflicted with the instructions. (CALJIC No. 1.00.) We presume the jury followed the court's instructions. (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1256.)

Finally, any claim of ambiguity is belied by the jury's express findings. The jury found that "the defendant intentionally killed [Tillman] by means of lying in wait." The jury also found Samuel committed attempted murder and the attempted murder was committed willfully, deliberately, and with premeditation.

DISPOSITION

The judgment (order) is affirmed.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

BALTODANO, J.        CODY, J.

10

Teresa P. Magno, Judge

Superior Court County of Los Angeles

_____

Victor J. Morse, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.